UNITED STATES OF AMERICA

IN THE WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| Holly Dexter, individually and as the Personal Representative of the Estate of Danielle Dexter,<br>      Plaintiffs,<br><br>v.<br><br>John Michael Moody, Robert Gillentine, Eaton County, a municipal corporation organized under the laws of the State of Michigan,<br>      Defendants. | File No. 1:20-cv-1196<br><br>Hon. Janet T. Neff<br>District Court Judge |

Brendon Basiga P69369
Lead Counsel for Plaintiff
2133 University Park Dr., Suite 200
Okemos, MI 48864
(517) 708-6343

J. Nicholas Bostic P40653
Co-Counsel for Plaintiff
909 N. Washington Ave.
Lansing, MI 48906
(517) 706-0132

**COMPLAINT AND JURY DEMAND**

Plaintiff, for her complaint, states:

1. This is a civil action seeking money damages and equitable relief for violations of the United States Constitution and federal statutes under 42 U.S.C. §1983 and state law claims.

2. Plaintiff is, and at all relevant times was, a competent adult and a resident of Ingham County in the State of Michigan.

3. Defendant John Michael Moody at all times relevant to this complaint was a



Basiga Law
Firm, PC

2133 University Park Dr
Suite 200
Okemos, MI 48864

P: 517.708.7830
F: 517.913.6343

deputy sheriff for the Eaton County Sheriff's Office. His county of residence is unknown and his place of conducting business was Eaton County in the State of Michigan.

4. Defendant Robert Gillentine at all times relevant to this complaint is a deputy sheriff for Eaton County Sheriff's Office. His county of residence is unknown and his place of conducting business is Eaton County in the State of Michigan.

5. Defendant Eaton County is a municipal corporation organized under the laws of the State of Michigan doing its business in the Western District of Michigan.

6. This cause of action arose in Eaton County in the Western District of Michigan.

7. At all times relevant to this matter, Defendant John Michael Moody was acting under color of law and he was a government actor.

8. This Court has jurisdiction pursuant to 28 USC §§1331 and 1343(a)(4) for the federal claims and 28 USC §1367(a) for the state law claims.

## GENERAL ALLEGATIONS

9. Paragraphs 1-8 are incorporated herein by reference.

10. On June 17, 2019, Danielle had called her father and left a voicemail explaining that she was really sorry and she had tried.

11. Danielle's father called her back and they spoke but Danielle did not mention the voicemail.

12. During the call, Danielle's statements scattered over several topics.

13. Plaintiff spoke to Danielle's maternal grandmother who reported to Plaintiff that she had spoken on the phone to Danielle.

14. During the call, Danielle's statements scattered over several topics.

15. Plaintiff then called Danielle on the telephone Danielle spoke of possibly



Basiga Law
Firm, PC

2133 University Park Dr
Suite 200
Okemos, MI 48864

P: 517.708.7830
F: 517.913.6343

admitting herself to Glasshouse.

16. Plaintiff had additional phone calls with her husband and her mother who had both spoken with Danielle and learned that she had locked her keys in her car.

17. Plaintiff then again called Danielle but could hardly understand her.

18. During this call, Plaintiff did hear Danielle mention "west side," a car wash and that she was on a mattress in a car wash.

19. Plaintiff asked her to keep talking but Danielle did not.

20. Plaintiff then drove to the West Saginaw area and initially went to the west side of I-96/I-69 but did not find her.

21. Plaintiff then drove around the area of the Pure Sleep Store at 6700 W. Saginaw Highway but did not locate Danielle's car.

22. Plaintiff observed employees at the back of the store on a break and that conversation revealed that Danielle was in the store on a mattress.

23. Plaintiff entered the store and spoke to Danielle but she was not coherent.

24. On June 17, 2019, Plaintiff called the Eaton County Central Dispatch and reported that her daughter, decedent Danielle Dexter, was inside a mattress store at 6007 W. Saginaw Highway (the Art Van Pure Sleep Store).

25. Plaintiff provided the following details to Central Dispatch at the times noted:

    a.    Call answered at 5:11:51 p.m.

    b.    Danielle had probably overdosed at 5:13:22 p.m.

    c.    Danielle had a knife at 5:13:22 p.m.

    d.    Danielle was 30 years old, was conscious, and was breathing at 5:13:22 p.m.



Basiga Law Firm, PC

2133 University Park Dr
Suite 200
Okemos, MI 48864

P: 517.708.7830
F: 517.913.6343

26. During the call, the 911 operator asked about weapons and Plaintiff knew that Danielle carried a knife so Plaintiff took it away from Danielle.

27. Plaintiff's call was disconnected from Eaton County Central Dispatch at 5:13:38 p.m.

28. Defendant Moody was the first officer to arrive.

29. Defendant Moody arrived at 5:17:50 p.m. (Elapsed time was 5:59).

30. Radio communications from unknown sources provided the following information to Central Dispatch at the times noted:

   a. "They got knife away from her" and "mother is with her" at 5:14:17 p.m.

   b. Danielle "was passed out in a bed" at 5:14:21 p.m.

   c. "Guessing she's OD' on meth at 5:15:35 p.m.

   d. Patient "is verbal" at 5:16:19 p.m.

31. Danielle was positioned so that her head was near the foot of the mattress and a mattress protective pad was across the foot of the bed.

32. Danielle's head was on the protective pad and her hands were under it.

33. Upon Defendant Moody's arrival, he walked in the front (north) door of the business and approached Plaintiff who was standing by the bed that Danielle was on.

34. Plaintiff observed that Defendant Moody's demeanor was aggressive.

35. Defendant Moody ordered Danielle to show her hands and she moved a little.

36. Defendant Moody then removed the protective pad by flinging it.

37. Plaintiff did not see any objects but saw Danielle start to turn at which time Defendant Moody started running out of the building leaving Plaintiff and Danielle where he found them.



Basiga Law Firm, PC

2133 University Park Dr
Suite 200
Okemos, MI 48864

P: 517.708.7830
F: 517.913.6343


38. As Defendant Moody reached the door, he yelled "she's got a gun."

39. Plaintiff then looked back down at Danielle and saw that she had been laying on a gun under her stomach.

40. Plaintiff initially started to run to the back of the store but turned around to go back to prevent Danielle from hurting herself.

41. Plaintiff grabbed Danielle's arm and pulled on it because Danielle had pointed the gun at Danielle's head.

42. At one point in the struggle, Plaintiff's hand slipped off of Danielle's arm and the gun discharged.

43. Danielle had shot herself in the head.

44. There had been three store employees in the building and they had moved to the south of the building toward an employee entrance and the office area.

45. After the gun discharged, Plaintiff then walked to the south of the store and all of them went outside.

46. At 5:19:32 p.m., Defendant Moody had informed Eaton County Central Dispatch that he was taking cover behind the ambulance.

47. A few seconds after exiting the south door of the building, Plaintiff walked to the west and then to the north along the side the building to where the police cars and ambulance had parked.

48. Defendant Gillentine arrived in a separate patrol vehicle and was instructed by Defendant Moody to search Plaintiff as he also informed Defendant Gillentine that Plaintiff was Danielle's mother.

49. Defendant Gillentine walked directly from his patrol car and then immediately up



Basiga Law
Firm, PC

2133 University Park Dr
Suite 200
Okemos, MI 48864

P: 517.708.7830
F: 517.913.6343


to Plaintiff as she was crying hysterically, grabbed her wrists with each of his hands, stood her up, turned her around, and performed a pat down search of her person with his hands.

50. At 5:29:33 p.m., other law enforcement units made entry behind a ballistic shield to discover Danielle in the same position with a pool of blood and a gunshot wound to the head.

51. The medical examiner was summoned at 5:55:51 p.m.

52. Danielle Dexter was pronounced dead at the scene by the medical examiner.

53. No life-saving measures or treatment measures were undertaken by any first responders.

## COUNT I – BREACH OF STATUTORY DUTY
(MCL 330.1276 – persons appearing to be incapacitated)

54. Paragraphs 1-52 are incorporated herein by reference.

55. Defendant Moody had received training and was certified as a police officer in the State of Michigan.

56. Defendant Moody had been informed that Danielle Dexter had overdosed on some type of narcotic or methamphetamine.

57. Defendant Moody was aware that Danielle Dexter was not properly responding to his verbal commands.

58. Defendant Moody knew that Danielle Dexter was being non-responsive during daytime hours while lying face down on a mattress for sale in a business open to the public.



Basiga Law Firm, PC

2133 University Park Dr
Suite 200
Okemos, MI 48864

P: 517.708.7830
F: 517.913.6343

59. Defendant Moody took no steps to determine why Danielle Dexter was being non-responsive.

60. Defendant Moody took no steps to determine if Danielle Dexter was in need of medical assistance.

61. All of the facts and circumstances available to Defendant Moody at the time he left the presence of Plaintiff and Danielle Dexter indicated that Danielle Dexter was incapacitated.

62. MCL 330.1276 mandates that an individual who appears to be incapacitated in a public place shall be taken into protective custody.

63. Defendant Moody's failure to investigate the condition of Danielle Dexter was a breach of his statutory duty.

64. Defendant Moody's fleeing from the scene was willful and wanton misconduct.

65. Defendant Moody's fleeing from the scene demonstrated a deliberate indifference to the health and safety of Danielle Dexter.

66. Defendant Moody's fleeing from the scene demonstrated a deliberate indifference to the health and safety of Holly Dexter and the other occupants of the building.

67. Defendant Moody's conduct was the direct and proximate cause of the death of Decedent Danielle Dexter.

WHEREFORE, Plaintiff requests that this Court enter judgment in favor of Plaintiff and against Defendant Moody in an amount not less than $1,500,000.00.

## COUNT II – SUBSTANTIVE DUE PROCESS
(42 U.S.C. §1983 – Fifth and Fourteenth Amendments)

68. Paragraphs 1 through 66 above are incorporated herein by reference.



Basiga Law Firm, PC

2133 University Park Dr
Suite 200
Okemos, MI 48864

P: 517.708.7830
F: 517.913.6343

69. Defendant Moody gave verbal orders to Danielle Dexter upon his approach to her placed on the mattress.

70. Danielle Dexter made a small movement to submit to Defendant Moody's command.

71. Defendant Moody was aware of the information concerning Danielle Dexter's condition.

72. Defendant Moody was aware of his own observations of her slow responses and lethargic movements.

73. The circumstances as presented created a special relationship between Defendant Moody and Danielle Dexter.

74. MCL 330.1276 created a special relationship between Defendant Moody and Danielle Dexter.

75. When Defendant Moody fled the scene, he was deliberately indifferent to his special relationship with Danielle Dexter and the danger she posed to herself.

76. When Defendant Moody failed to determine the condition and needs of Danielle Dexter, he was deliberately indifferent to his special relationship with Danielle Dexter and the danger she posed to herself.

77. As of June 17, 2019, it was clearly established that a police officer's deliberate indifference to a citizen with whom he had a special relationship was a constitutional violation.

78. The deliberate indifference of Defendant Moody to Danielle Dexter was a direct and proximate cause of the death of Danielle Dexter.



Basiga Law
Firm, PC

2133 University Park Dr
Suite 200
Okemos, MI 48864

P: 517.708.7830
F: 517.913.6343

WHEREFORE, Plaintiff requests this Honorable Court enter judgment for Plaintiff and against Defendant Moody in an amount not less than $1,500,000.00.

### COUNT III – UNLAWFUL SEARCH
(42 U.S.C. § 1983 - Fourth Amendment)

79. Paragraphs 1 through 78 above are incorporated herein by reference.

80. Defendant Moody and Defendant Gillentine did not have reasonable suspicion or probable cause to believe that Holly Dexter was armed.

81. Defendant Moody and Defendant Gillentine did not have reasonable suspicion or probable cause to believe that Holly Dexter was a danger to herself or anyone else.

82. Defendant Moody and Defendant Gillentine did not have reasonable suspicion or probable cause to believe that Holly Dexter had committed any offense.

83. Defendant Gillentine's pat down of Plaintiff Holly Dexter was a search.

84. Defendant Gillentine did not ask Plaintiff for consent and did not obtain consent.

85. Defendant Gillentine did not have any exception to the warrant requirement of the Fourth Amendment.

86. Defendant Gillentine had no reasonable suspicion or probable cause to believe that Plaintiff possessed any contraband or evidence.

87. The search of Plaintiff was unreasonable and a violation of her constitutional rights under the Fourth Amendment to the United States Constitution.

88. As of June 2019, no reasonable police officer would have believed that either a pat-down or search of Plaintiff under the circumstances presented was lawful.



Basiga Law Firm, PC

2133 University Park Dr
Suite 200
Okemos, MI 48864

P: 517.708.7830
F: 517.913.6343

89. Holly Dexter was damaged by the conduct of Defendants Moody and Gillentine in that she suffered anxiety, stress, embarrassment, fear, terror, and fright during the invasion of her privacy.

WHEREFORE, Plaintiff requests that this Court enter judgment in her favor and against Defendant Moody and Defendant Gillentine in an amount not less than $25,000.00.

## COUNT IV – UNLAWFUL SEIZURE
(42 U.S.C. §1983 – Fourth Amendment)

90. Paragraphs 1- 89 above are incorporated herein by reference.

91. Defendant Gillentine first encountered Plaintiff Holly Dexter while she was sitting on the step of a rescue truck as she was crying hysterically with her hands partially over her face.

92. Defendant Gillentine knew or should have known that Plaintiff Holly Dexter had just witnessed Plaintiff's daughter shoot herself in the head.

93. Defendant Gillentine told Plaintiff Holly Dexter to stand up and as he did so, he took his hands and grabbed her wrists to pull her up from her sitting position.

94. Defendant Gillentine then turned Plaintiff around with her back to him and conducted a pat down search of her person with his hands.

95. Plaintiff followed Defendant Gillentine's verbal and physical direction and complied.

96. Defendant Gillentine had no reasonable suspicion or probable cause to believe that Plaintiff was armed.



Basiga Law Firm, PC

2133 University Park Dr
Suite 200
Okemos, MI 48864

P: 517.708.7830
F: 517.913.6343

97. Defendant Gillentine had no reasonable suspicion or probable cause to believe that Holly Dexter was a threat to herself or anyone else.

98. Defendant Gillentine did not have a warrant or court order to touch, detain, or arrest.

99. Defendant Gillentine did not have a reasonable suspicion or probable cause to believe that Holly Dexter had committed any offense at the time he restrained her liberty.

100. Defendant Gillentine did not have a reasonable suspicion or probable cause to believe that Holly Dexter was in possession of any evidence of any crime.

101. As of June 2019, it was clearly established that a police officer had to have a warrant or reasonable suspicion or probable cause to believe that a person was committing, had committed or was about to commit a crime before depriving them of their liberty.

102. Under the circumstances, Defendant Gillentine arrested Plaintiff Holly Dexter.

103. Holly Dexter was damaged by the conduct of Defendant Gillentine in that she suffered anxiety, stress, embarrassment, fear, terror, and fright.

104. Under the circumstances presented, Defendant Gillentine violated the Fourth Amendment rights of Plaintiff Holly Dexter.

WHEREFORE, Plaintiff requests this Honorable Court enter judgment for Plaintiff and against Defendant Gillentine in an amount not less than $25,000.00.

## COUNT V – FAILURE TO TRAIN
(42 U.S.C. §1983 – Fourth and Fourteenth Amendments)

105. Paragraphs 1 through 104 above are incorporated herein by reference.



Basiga Law Firm, PC

2133 University Park Dr
Suite 200
Okemos, MI 48864

P: 517.708.7830
F: 517.913.6343

106. Defendant Moody obtained his certification to be a police officer in Michigan on December 14, 2018.

107. Defendant Moody activated his certification with his employment by Defendant Eaton County on January 14, 2019.

108. On June 17, 2019, Defendant Moody was assigned as a patrol deputy by the Eaton County Sheriff.

109. On June 17, 2019, Defendant Moody was performing his assigned duties in a one-person patrol unit.

110. On June 17, 2019, Defendant Moody responded to the dispatch concerning Danielle Dexter and was the first officer to arrive.

111. Defendant Eaton County had not provided adequate training to Defendant Moody before assigning him to full patrol duties without a field training officer, experienced officer, or supervisor.

112. Defendant Eaton County had not provided adequate training to Defendant Moody to prepare him to meet his obligations under MCL 333.1267 or the Fourteenth Amendment.

113. Defendant Eaton County had not provided adequate training to Defendant Moody to prepare him to meet his obligations under the Fourth Amendment regarding searches or seizures of persons.

114. Responding to a call of an overdosed individual is a routine and expected task for a police officer.

115. The ability to recognize and assess incapacitated persons is a routine and expected task for a police officer.



Basiga Law Firm, PC

2133 University Park Dr
Suite 200
Okemos, MI 48864

P: 517.708.7830
F: 517.913.6343

116. Defendant Eaton County disregarded its obligations to have its deputies comply with the Fourth Amendment.

117. Defendant Eaton County disregarded its obligations to have its deputies comply with MCL 330.1276 and the Fourteenth Amendment.

118. The routine nature of the type of call at issue make the need for training in the limitations of the Fourth Amendment obvious.

119. The routine nature of the type of call at issue make the need for training in the assessment of incapacitated individuals obvious.

120. The obvious nature of the need for adequate training, the obvious nature of the need, and the failure to train deputies to meet the obligations demonstrates a deliberate indifference to the rights of Danielle Dexter and Plaintiff.

121. The failure to train Defendant Moody on the part of Defendant Eaton County was a direct and proximate cause of injury to Danielle Dexter and to Plaintiff.

122. Defendant Moody's conduct was the direct and proximate cause of the death of Decedent Danielle Dexter.

123. Holly Dexter was damaged by the conduct of Defendants Moody and Gillentine in that she suffered anxiety, stress, embarrassment, fear, terror, and fright during the invasion of her privacy.

WHEREFORE, Plaintiff requests this Honorable Court enter judgment for Plaintiff and against Defendant Eaton County in an amount not less than $1,500,000.00.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff requests that judgment enter for Plaintiff and

1. against all Defendants as specified in the individual counts as asserted above;



Basiga Law
Firm, PC

2133 University Park Dr
Suite 200
Okemos, MI 48864

P: 517.708.7830
F: 517.913.6343

2. against all individual Defendants for exemplary damages in an amount not less than $100,000.00 each;

3. against all Defendants for attorney fees as allowed by 42 USC §1988;

4. against all Defendants for interest on the award to the date of filing of this complaint;

5. grant such other relief as allowed by law.

### JURY DEMAND

Plaintiff hereby demands trial by jury on all counts.

| | |
|---|---|
| 7/8/2020 | /s/ Brendon Basiga |
| Date | Brendon Basiga (P69369) |



Basiga Law Firm, PC

2133 University Park Dr
Suite 200
Okemos, MI 48864

P: 517.708.7830
F: 517.913.6343

Signature by Plaintiff:

7/8/2020
Date

*Holly Dexter*
Holly Dexter

Signature by Attorney:

7/8/2020
Date

*Brendon Basiga*
Brendon Basiga (P69369)



Basiga Law
Firm, PC

3 University Park Dr
Suite 200
Okemos, MI 48864

P: 517.708.7830
F: 517.913.6343